COMMONWEALTH of Pennsylvania

v.

**542 ONTARIO STREET, BETHLEHEM, PA, 18015.**

**Appeal of: Freddie Blas.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2009.

Decided Feb. 17, 2010.

---

James Martin Connell, Bethlehem, for appellant.

Kristine M.L. Blake, Easton, for appellee.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

In this appeal from an order for forfeiture of real estate, we face an unusual question: where an owner of property is acquitted of drug-related criminal charges, what standard, if any, should be used in assessing whether a subsequent civil forfeiture constitutes an impermissible excessive fine?

In particular, Freddie Blas appeals from an order of the Court of Common Pleas of Northampton County (trial court) that granted a petition filed by the Commonwealth seeking forfeiture of certain real property he owned. We affirm.

## I. Background

Blas was the owner of property located at 542 Ontario Street in Bethlehem, Northampton County, Pennsylvania. On September 23, 2005, the Bethlehem Police executed a search warrant during which they found Stephen Rodriguez, whom Blas purportedly did not know. During the search of the property, they also found controlled substances with a value of $180. The search warrant was premised on at least 10 drug-related complaint calls to the Bethlehem Police regarding the subject property, a past history of drugs at the property and an investigation which included controlled purchases by a confidential informant.

The application for the search warrant noted that a similar warrant was executed on December 2, 2004, following citizen complaints and a subsequent investigation which involved surveillance and four to five controlled purchases by confidential informants.

During execution of the 2004 warrant, officers recovered 16 sandwich baggies containing cocaine from an individual inside the property, as well as marijuana and a digital scale with cocaine residue in other parts of the property. Blas was not at the residence when the search was initiated. Blas was not charged with any criminal wrongdoing at that time because he alleged no knowledge of the drugs and paraphernalia, and because he indicated a willingness to cooperate with law enforcement efforts to eliminate the drug problem in the neighborhood.

Unlike the sequelae of the earlier search, however, after execution of the 2005 search warrant, the police arrested Blas. Significant for current purposes, he was charged with possession of a controlled substance (cocaine), possession with intent to deliver a controlled substance, conspiracy to possess cocaine with intent to deliver and possession of drug paraphernalia.

## II. Forfeiture Petition

On December 23, 2005, the Commonwealth filed the present forfeiture action. The trial court issued a rule to show cause why the petition for forfeiture should not be granted. The Commonwealth served Blas with its forfeiture petition on October 17, 2006, just before the start of his criminal trial.

On October 18, 2006, a jury acquitted Blas of the drug-related criminal charges.

On November 9, 2006, Blas filed preliminary objections to the forfeiture action, based upon his assertion that the Commonwealth did not serve him with the appropriate notice of the forfeiture within the required time period. On February 22, 2007, the trial court overruled the ob-

jections. Blas then filed an answer to the forfeiture action.

The forfeiture petition was the subject of two procedures. First, a jury trial was held on March 24 and 25, 2008. At that time, the parties agreed that while the jury would decide the factual questions relating to whether the Commonwealth was entitled to forfeiture of the real property, the legal question of whether forfeiture of the house violated the Excessive Fines clause of the United States Constitution would be decided by the trial court after the jury rendered a verdict.

The jury found in favor of forfeiture, specifically finding (1) that a nexus existed between Blas and the unlawful drug activity at his house, (2) that Blas' house was used or possessed by a person other than him for an unlawful purpose and, of particular import for our analysis, (3) that Blas knew of or consented to the use of his house by another for an unlawful use.

Second, the trial court held a hearing on April 11, 2008, concerning Blas' defense that the forfeiture constituted an excessive fine proscribed by the Eighth Amendment to the United States Constitution. During that hearing, Blas orally moved for judgment notwithstanding the verdict, which the trial court denied.[1]

### III. Trial Court Decision

After hearing, the trial court issued an opinion concluding that forfeiture was appropriate. The trial court first noted that Article 1, Section 13 of the Pennsylvania Constitution is coextensive with the Eighth Amendment of the United States Constitution, *Jackson v. Hendrick,* 509 Pa. 456, 465, 503 A.2d 400, 404 (1986), and that the Eighth Amendment is applicable to the states by virtue of the 14th Amendment. *Commonwealth v. Real Property and Improvements Commonly Known As 5444 Spruce Street, Phila.,* 574 Pa. 423, 832 A.2d 396 (2003). Also, the trial court noted that the Commonwealth recognizes the Excessive Fines clause as a defense to a forfeiture action. *Brown v. Commonwealth,* 940 A.2d 610 (Pa.Cmwlth.2008).

Because of the coextensive applicability of the United States and Pennsylvania Constitutions, the Pennsylvania Supreme Court in *5444 Spruce Street* concluded that the holding of the United State's Supreme Court in *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), controlled the analysis such that the "principle of proportionality" applied and "[t]he amount of a forfeiture must bear some relationship to the gravity of the offense [the forfeiture] is designed to punish." 524 U.S. at 334, 118 S.Ct. 2028. If forfeiture represents a grossly disproportional amount relative to the crime, then the forfeiture is unconstitutional.

The hearing on the excessive fine issue included a stipulation that the value of Blas' house was $65,000. After noting this, the trial court recited the following factors relevant to the excessive fine analysis: (1) the defendant's conduct; (2) the penalty imposed as compared to the maximum penalty available; (3) the character of the defendant's conduct as isolated or repeated; and (4) the resulting harm from the crime charged. *See 5444 Spruce Street.*

---

1. The trial court indicated that Blas filed a brief in support of the motion for judgment notwithstanding the verdict in which he raised a challenge that the court had already addressed at the April 11 hearing. Also, the trial court noted that Blas again raised the service issue addressed in the preliminary objections. In its opinion, the trial court expressly denied any additional issues raised in the brief and indicated that the only issue before the court was the excessive fines issue.

In considering the question, the trial court compared the value of the house to the value of the controlled substance found, i.e., $65,000 to $180. The trial court then noted the jury's finding that Blas knew of or consented to the unlawful use of his property, opining that this finding supported a conclusion that the jury did not believe that Blas had no knowledge of the on-going illegal conduct occurring within his property.

The trial court rejected Blas' reliance upon his acquittal on the drug charges. It noted holdings that the Commonwealth's forfeiture actions do not need to be premised on a conviction. *See, e.g., Commonwealth v. 502–504 Gordon Street,* 147 Pa. Cmwlth. 330, 607 A.2d 839, 842 (1992), *aff'd,* 535 Pa. 515, 636 A.2d 626 (1994).

As to the comparison of the value of the property to the maximum penalty, the trial court noted that the maximum penalty for possession with intent to deliver a controlled substance, a charge for which Blas was ultimately acquitted, was 10 years' imprisonment and/or a $100,000 fine, an amount higher than the $65,000 value of his property. The trial court rejected Blas' argument that his acquittal meant that the maximum penalty that could be imposed was zero. The trial court reiterated the above authority for the proposition that an underlying conviction is not necessary in forfeiture proceedings.

## IV. Current Appeal

■ In this appeal, Blas raises the following issues: (1) whether the trial court erred in overruling his preliminary objections relating to service; (2) whether the trial court erred in denying judgment notwithstanding the verdict; and (3) whether

the forfeiture of his property violates the Excessive Fines clause.[2]

## A. Preliminary Objections

■ We first address Blas' argument that the trial court erred in overruling his preliminary objections to the forfeiture action. Blas argues that the so-called Controlled Substances Forfeiture Act (Forfeiture Act), 42 Pa.C.S. §§ 6801–6802, directs that the Rules of Civil Procedure apply in forfeiture proceedings; therefore, the Commonwealth was required to comply with the provisions for service in these Rules. Blas asserts that the Commonwealth failed to properly serve him because the Commonwealth filed its forfeiture petition on December 23, 2005, but did not serve him until October 17, 2006. Blas asserts that such service was stale, and he notes that the Commonwealth never sought to have the Clerk of Courts reinstate the original process as a means to correct the allegedly untimely service. Further, Blas argues that the forfeiture petition failed to contain a caption with the name of the court, the number of the action and the name of the pleading, in violation of Pa. R.C.P. No. 1018.

In response, the Commonwealth contends that the trial court correctly overruled Blas' preliminary objections regarding service and caption errors, pointing to provisions of the Forfeiture Act which address the form and service of forfeiture actions. Section 6802 of the Forfeiture Act provides as follows:

> (a) **General procedure.**—The proceedings for the forfeiture or condemnation of property, the sale of which is provided for in this chapter, shall be in rem, in which the Commonwealth shall be the plaintiff and the property the defendant.

---

2. In a forfeiture case, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed

an error of law. *Commonwealth v. 1997 Mitsubishi Diamante,* 950 A.2d 1114 (Pa.Cmwlth. 2008).

A petition shall be filed in the court of common pleas ... where the property is located, verified by oath or affirmation of an officer or citizen, containing the following:

(1) A description of the property seized.

(2) A statement of the time and place where seized.

(3) The owner, if known.

(4) The person or persons in possession, if known.

(5) An allegation that the property is subject to forfeiture pursuant to section 6801(a) or 6801.1(a) and an averment of material facts upon which the forfeiture action is based.

(6) A prayer for order of forfeiture that the property be adjudged forfeited to the Commonwealth and condemned and be ordered sold according to law, unless cause be shown to the contrary.

**(b) Notice to property owners.**—A copy of the petition required under subsection (a) shall be served personally or by certified mail on the owner or upon the person or persons in possession at the time of seizure. The copy shall have endorsed a notice, as follows:

> To the Claimant of within Described Property: You are required to file an answer to this petition, setting forth your title in, and right to possession of, said property within 30 days from the service hereof, and you are also notified that, if you fail to file said answer, a decree of forfeiture and condemnation will be entered against said property.

42 Pa.C.S. § 6802. The Commonwealth points out that these provisions are adequate to inform the owner of property of a potential forfeiture. *See Commonwealth v. $1,800 U.S. Currency*, 679 A.2d 275 (Pa. Cmwlth.1996) (Forfeiture Act's provisions for the initiation of a forfeiture action ap-

ply rather than those in the Rules of Civil Procedure); *Commonwealth v. One 1991 Cadillac Seville*, 853 A.2d 1093 (Pa. Cmwlth.2004) (notice provisions of the Forfeiture Act apply).

The quoted provisions of the Forfeiture Act and the cited case law support the Commonwealth's position. While the Forfeiture Act sets forth the manner of service, there are no provisions relating to the timing of service. Because these provisions provide a framework that ensures sufficient notice to an owner, we discern no error on the part of the trial court in overruling Blas' preliminary objections. This is especially true in the absence of allegations or proof of prejudice to Blas' ability to defend against the forfeiture petition.

### B. Judgment Notwithstanding Verdict/Excessive Fine

Blas next contends that various grounds exist to support reversal of the trial court's decision. Blas asks this court to reconsider the factual basis for the trial court's decision by taking "judicial notice of the rise of real estate prices in the Lehigh Valley between 2003 and 2008" in order to reevaluate the trial court's conclusion that the forfeiture is not grossly disproportional to the gravity of the activity giving rise to the forfeiture. Blas offers no discussion in support of this argument, and, consequently, we reject this argument as waived. *Ward v. Dep't of Cmty. Affairs*, 685 A.2d 1061 (Pa.Cmwlth.1996).

#### 1. Contentions

With regard to the merits of the trial court's conclusion that the forfeiture is not grossly disproportional, Blas relies upon the United States Supreme Court decision in *Bajakajian*. In that case, the Court held that a fine is excessive if it is grossly disproportional to the gravity of a defen-

dant's offense. Blas points out that the Pennsylvania Supreme Court adopted the *Bajakajian* standard in *5444 Spruce Street.* Blas argues that in order for property to be forfeited, it must be both an instrumentality of crime and the value of the property must bear some proportional relationship to the culpability of the owner.

Blas also relies upon *Brown* in asserting that there is no evidence connecting him to the underlying offense in this case. Citing *5444 Spruce Street,* he stresses the difference between his situation (where he was acquitted of all criminal charges) and the owner of 5444 Spruce Street, who pled guilty to a crime and where the court looked to the upmost possible sentence in analyzing the forfeiture. In *5444 Spruce Street,* the Supreme Court remanded to the trial court to determine the value of the property. Ultimately, this Court affirmed the trial court's decision to approve forfeiture because the possible fine was $100,000. Hence, we concluded the forfeiture of the property was not disproportional to the gravity of the crime, because the upper-most fine that a court could impose was $100,000. Blas argues that, because he was acquitted, there is no potentially proportional penalty with which to compare the value of his property.

■ Relying upon *502–504 Gordon Street,* the Commonwealth asserts that a conviction is not a necessity in seeking forfeiture. *502–504 Gordon Street* involved the forfeiture of a bar in which a raid produced a number of patrons in possession of drugs and drug paraphernalia. In that case, this Court eventually reversed the forfeiture, but did so on the basis of the "innocent owner defense," because the bar owner informed police of the problem on the property and warned pa-

trons not to use drugs on the property. While the case supports the Commonwealth's position that the owner of the property need not be personally charged with a crime in order to proceed with a forfeiture action, it does not address the issue in the context of the Excessive Fines clause.[3]

## 2. Discussion

### a.

■ Civil forfeitures are the *in rem* consequence for wrongdoing prescribed by statute. *Commonwealth v. Perez,* 941 A.2d 778 (Pa.Cmwlth.), *appeal denied,* 598 Pa. 751, 954 A.2d 578 (2008) (McGinley, J.). Property is forfeited not as a result of the criminal conviction, but through a separate proceeding, civil in form but quasi-criminal in nature, in which the agency seeking the property must show, by a preponderance of the evidence, a nexus between the property sought and the possessor's illegal activity. *Id.; Commonwealth v. $3,222.00 U.S. Currency,* 856 A.2d 288 (Pa.Cmwlth. 2004) (Cohn, J.); *Commonwealth v. $73,671.30 Cash, U.S. Currency and Assorted Firearms (Artello/Smith),* 654 A.2d 93 (Pa.Cmwlth.1995) (Pellegrini, J.).

Of primary importance here, "[i]t is not necessary, therefore, that a forfeiture be supported by an underlying criminal conviction." *Perez,* 941 A.2d at 780, *quoting Commonwealth v. $259.00 Cash U.S. Currency,* 860 A.2d 228, 232 n. 7 (Pa.Cmwlth. 2004) (*en banc*) (Leavitt, J.). Indeed, the recent case of *Perez* presents a useful example. In that case, a drug conviction was reversed on appeal and *nolle prossed* on remand. Despite the lack of an underlying conviction, the trial court declined to return forfeited property to the petitioner,

---

3. There are a number of cases involving the defense of "innocent owner," but Blas does not raise that issue.

and this Court affirmed. Given these cases, we reject any contention that an acquittal entitles an owner to a favorable result in a subsequent forfeiture proceeding.

Our conclusion is further supported by the different burdens of proof involved. The criminal burden is proof beyond a reasonable doubt; however, proof in a forfeiture proceeding must satisfy only a preponderance of the evidence standard. *Perez*; *$3,222.00 U.S. Currency*; *$73,671.30 Cash*. Clearly, proof in a forfeiture proceeding may be sufficient to meet that lesser standard even though it may be insufficient to obtain a criminal conviction.

**b.**

▬ Turning next to an analysis of Blas' excessive fine argument, our Supreme Court in *5444 Spruce Street* adopted the United States Supreme Court test for evaluating the issue and directed its use in forfeiture proceedings. A court must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportionate to the gravity of the defendant's offense, it is unconstitutional. *5444 Spruce Street*, 574 Pa. at 433, 832 A.2d at 402. Further,

> The [United States Supreme] Court enumerated factors by which a court may measure the gravity of the offense, each of which is limited to the conduct of the defendant: the penalty imposed as compared to the *maximum penalty available*; whether the violation was isolated or part of a pattern of misbehavior; and, the harm resulting from the crime charged.

*Id.* (emphasis added).

Our current challenge is to determine generally what offense and specifically what maximum penalty should be used in the analysis where, as here, an owner is acquitted and therefore not convicted of any offense and not subject to any criminal penalty.

The approved test focuses on the conduct of the defendant. It does not explicitly require a conviction. Considering this, and mindful of our earlier discussion regarding the differences between criminal prosecutions and civil forfeiture proceedings, especially the different burdens of proof, we conclude that Blas' conduct as established by a preponderance of the evidence in the forfeiture proceedings may be evaluated. Further, the value of Blas' house may be compared against the maximum penalty for conduct which was established by a preponderance of the evidence in the forfeiture proceedings.

Blas was charged with various felony drug offenses, including conspiracy to possess with intent to deliver cocaine, as a result of his facilitation of drug sales at his property. The maximum fine for possession with intent to deliver cocaine is $100,000. Section 13(f)(1.1) of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(f)(1.1).[4] A conspiracy to possess with intent to deliver is of the same grade and degree as the object crime. 18 Pa.C.S. § 905(a). Accordingly, a person conspiring to commit that crime is subject to a maximum $100,000 fine.

A person is involved in a conspiracy to commit a crime if, with the intent of promoting or facilitating its commission, he: (1) agrees with such other person that one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person in the planning or commission of such crime or of

---

4. Act of April 14, 1972, P.L. 233, *as amended.*

an attempt or solicitation to commit such crime. 18 Pa.C.S. § 903(a).

The evil against which a conspiracy is aimed is the agreement of two or more persons to act in concert for a criminal purpose. *Commonwealth v. Timer*, 415 Pa.Super. 376, 609 A.2d 572 (1992). Since an explicit or formal agreement to commit a crime can seldom be proved, and need not be, proof of a criminal partnership or conspiracy can be extracted from the circumstances that attend its activities. *Commonwealth v. Davalos*, 779 A.2d 1190 (Pa.Super.2001).

In this case, the civil jury found that Blas' house was used by or possessed by a person other than him for an unlawful purpose, and, significantly, Blas knew of or consented to the use of his house by another for an unlawful use. These findings, together with the circumstances set forth in the affidavits of probable cause and police reports setting forth the results of the 2005 search, are sufficient to support a preponderance-of-the-evidence determination Blas conspired with the occupant of his property to possess with intent to deliver. As a result, it is appropriate to consider the gravity of that conduct and the maximum penalty available for the conspiracy.

First, we compare the penalty imposed by the forfeiture against the maximum penalty available for conspiracy to possess cocaine with intent to deliver. We discern no error in the trial court's determination that the value of the house, $65,000, is not grossly disproportionate to the maximum penalty for the conspiracy, $100,000.

We next consider whether Blas' violation was isolated or part of a pattern of misbehavior. The trial court accepted as credible evidence adduced at the criminal trial indicating the Bethlehem Police employed multiple resources and various countermeasures to combat illegal activity at Blas'

property. These included numerous controlled purchases at the property. As Blas does not dispute that these findings are supported by substantial evidence, we perceive no error in the trial court's conclusion that Blas' violation was part of a pattern of misbehavior.

Finally, we evaluate the harm resulting from Blas' conduct. The trial court, quoting this Court, acknowledged that the harm caused to society by drug trafficking is self-evident. Also, the trial court found that Blas' property exacted a heavy toll from government resources, including the countermeasures employed by the Bethlehem Police over a one year period. Further, relying on the civil jury's findings, the trial court found the harm resulting from Blas' property was widespread.

This determination is supported by the record. In addition, it is in harmony with settled law, as stated by our Supreme Court:

> [C]ollective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Commonwealth v. Miller,* 469 Pa. 24, 26, 364 A.2d 886, 887 n. 5 (1976), *quoting Iannelli v. United States,* 420 U.S. 770, 778, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). In light of this analysis, Blas' argument that no evidence connects him to the object crime is unpersuasive.

In sum, we discern no error in the determination that the forfeiture did not violate the prohibition against excessive fines. Considering all of the foregoing, we see no reason to disturb the trial court's thoughtful and patient disposition of the forfeiture petition.

### ORDER

**AND NOW,** this 17th day of February, 2010, the orders of the Court of Common Pleas of Northampton County which overruled preliminary objections, denied a motion for judgment notwithstanding the verdict and granted the forfeiture petition are **AFFIRMED.**

### DISSENTING OPINION BY Judge PELLEGRINI.

Because I disagree with the majority that a property owner may be punished with the forfeiture of his property despite being acquitted of the underlying criminal offense without violating the Excessive Fines Clause, I respectfully dissent.

Freddie Blas is the owner of property at 542 Ontario Street in Bethlehem, Pennsylvania (Property). In 2005, Bethlehem police executed a search warrant on the property and found Stephen Rodriguez with controlled substances valued at $180. The police arrested Blas and charged him with possession of a controlled substance, possession with intent to deliver a controlled substance, conspiracy to possession with intent to deliver a controlled substance, and possession of drug paraphernalia. The Commonwealth filed a petition for forfeiture of the Property.

Blas was acquitted on all four criminal charges. Thereafter, the Court of Common Pleas of Northampton County (trial court) conducted a jury trial on the forfeiture petition. The jury found that: (1) a nexus existed between the Property and unlawful drug activity; (2) the Property was unlawfully used or possessed by a person other than Blas; and (3) Blas knew of or consented to the person's unlawful use or possession of the Property. The jury determined that forfeiture of the Property was warranted.

Blas argued before the trial court that forfeiture of the Property was grossly disproportionate to the gravity of his offense and, thus, was an excessive fine. In finding that the forfeiture of Blas' property was not an excessive fine, the trial court compared the value of the Property ($65,000) to the maximum fine for the charges filed against Blas ($100,000), despite the acquittals, and concluded that the amount of the forfeiture was not grossly disproportionate to the gravity of the offense. The trial court also concluded that the violations of law occurring on the Property were part of a pattern of behavior and caused widespread harm.

On appeal, Blas argues that the forfeiture of his Property was an excessive fine under the United States Supreme Court decision in *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). In that case, the Supreme Court held that a forfeiture of $357,144 for violation of a statute that criminalizes the knowing transportation of more than $10,000 cash out of the country without reporting it was an excessive fine because the penalty was grossly disproportionate to the offense committed, a mere reporting offense. The Court held that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle

of proportionality. The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028. The Court found two considerations particularly important in determining if a fine is excessive. First, judgments about the appropriate punishment belong to the legislature. Second, "any judicial determination regarding the gravity of a *particular criminal offense* will be inherently imprecise." *Id.* at 336, 118 S.Ct. 2028 (emphasis added). It is thus clear that the United States Supreme Court contemplated that its analysis would apply in the context of an underlying criminal offense.

Our Supreme Court adopted the *Bajakajian* standard in *Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street, Philadelphia, PA*, 574 Pa. 423, 832 A.2d 396 (2003). *Spruce Street*, like *Bajakajian*, involved the seizure of property following a guilty plea to an underlying criminal offense. Our Supreme Court listed various factors to consider when determining whether a fine is excessive: "the penalty imposed as compared to the *maximum penalty available;* whether the violation was isolated or part of a pattern of *misbehavior;* and, the harm resulting from *the crime charged.*" *Spruce Street*, 574 Pa. at 433, 832 A.2d at 402 (emphasis added).

These factors show that our Supreme Court only contemplated performing an excessive fines analysis when there was an underlying criminal conviction. When the owner of the forfeited property was not charged with a crime or, as here, is acquitted, there is no "maximum penalty available;" legally, there has been no "misbehavior"; and there is no "crime." These factors are simply irrelevant to cases, such as the present one, where there is no underlying criminal conviction. In short,

both the United States and Pennsylvania Supreme Courts presupposed that their standards would only apply when there was an underlying criminal conviction, which the present case lacks.

In fact, I have been able to discover only one case nationwide since *Bajakajian* similar to the facts before us, quite possibly because of the inherent incongruity between an acquittal in a criminal case followed by a civil forfeiture of the instrumentality of the "crime" that had not occurred. In *Galloway v. City of New Albany*, 735 So.2d 407 (Miss.1999), the Supreme Court of Mississippi squarely held that the Excessive Fines Clause of the Mississippi Constitution, which is identical to the Excessive Fines Clause of the United States Constitution (and hence identical to the Pennsylvania Constitution as well), prohibits the forfeiture of a vehicle whose owner was acquitted of drug charges.

In *Galloway*, Galloway drove his wife in his truck to a rendezvous with his wife's ex-husband, who was not paying his child support to Galloway's wife. In fact, Galloway's wife and her ex-husband had agreed that he would pay part of his delinquent child support in exchange for prescription narcotics that Galloway's wife possessed as a result of a recent surgery. However, the ex-husband was a police informant and was accompanied by an undercover officer. When they reached their rendezvous point, Galloway's wife exited his vehicle, entered the vehicle containing her ex-husband and the undercover officer, and sold the prescription medication for the child support. All the evidence at trial showed that Galloway had no knowledge of the drug dealing and thought he was merely driving his wife to meet her ex-husband to receive the child support payment. As a result, the trial court directed a verdict in Galloway's

favor. His wife, who was a co-defendant, was acquitted by the jury.

Meanwhile, a civil forfeiture case against Galloway had been stayed until the criminal proceedings ended. After Galloway was acquitted by directed verdict, he filed for summary judgment in the forfeiture case, which was denied. Following a non-jury trial, the forfeiture of Galloway's truck was granted. Galloway appealed to the Supreme Court of Mississippi, alleging various constitutional violations, including a violation of the Excessive Fines Clause.

The Supreme Court of Mississippi used a four-part test to determine whether a fine is excessive that is substantially identical to the Pennsylvania test.[1] It summarized its test by explaining that "the forfeited property must have a sufficiently close relationship to the illegal activity [and] must not impose upon the owner a penalty grossly disproportionate to his offense." *Galloway*, 735 So.2d at 413. The Court held that the forfeiture of Galloway's truck was disproportionate—and, thus, in violation of the Excessive Fines Clause—because he was acquitted of the drug charges and that there was not a close relationship between the truck and any illegal activity.

In this case, as in *Galloway*, it is clear that the forfeiture was grossly disproportionate to the offense allegedly committed.

The first factor to determine whether a fine is grossly disproportionate is whether the penalty imposed is excessive compared to the maximum penalty available. *Spruce Street*, 574 Pa. at 433, 832 A.2d at 402. The majority erroneously used the maximum penalty available for the violation of the underlying criminal statute, which is $100,000, to determine the maximum penalty available. The correct measure is the maximum penalty available *to that particular person*. Here, the defendant was acquitted, so the maximum penalty available *to him*, like the maximum penalty available to all those acquitted of criminal offenses, is a fine of $0. The forfeiture of his house, which had a value of $65,000, is grossly disproportionate to a maximum penalty available of $0.[2]

The second factor is whether the violation was isolated or part of a pattern of misbehavior. *Id.* Because the defendant was acquitted, it is legally conclusive that there was no violation or misbehavior. Something that has not occurred cannot have occurred in a pattern. Finally, this Court must consider the harm resulting from the crime charged. *Id.* Again, because the defendant was acquitted, there was no "crime" from which harm could have resulted, making the forfeiture of the defendant's house grossly disproportionate.

---

1. Specifically, the four factors are:

   (1) the nexus between the offense and the property and the extent of the property's role in the offense;
   (2) the role and culpability of the owner;
   (3) the possibility of separating the offending property from the remainder; and
   (4) whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner.

   *Galloway*, 735 So.2d at 412.

2. Even if the majority is correct that the maximum penalty available was $100,000, this factor still is not met. The worst that can be said about Blas' behavior is that he failed to do all that could be reasonably expected in preventing his house from being used for criminal activity. No penalty was imposed on Blas for his alleged criminal conduct. Thus, the gravity of Blas' "offense" is necessarily at the lowest possible level, especially considering the enormity of the penalty that could have been imposed. Moreover, it is highly unlikely that a trial court would impose a $100,000 fine when the value of the illegal substances was only $180.

For the foregoing reasons, I respectfully dissent.

Judges COHN JUBELIRER and BUTLER join.