IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| $12,598.00 U.S. Currency | : | |
| One 2008 Mercedes Benz M-Class | : | No. 944 C.D. 2020 |
| (Com. v. Kashif Robertson) | : | |
| | : | |
| Appeal of: Kashif M. Robertson | : | Submitted: August 9, 2024 |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                             FILED:  September 24, 2024

Kashif M. Robertson (Appellant) appeals to this Court from the August 26, 2020 Order of the Court of Common Pleas of Dauphin County (Trial Court) granting a Petition in Forfeiture (Petition) submitted by the Commonwealth, which sought the forfeiture of $12,598 in cash found on Appellant's person and in his vehicle during a February 2, 2019 traffic stop and subsequent investigation.[1] Appellant argues that the Commonwealth submitted insufficient evidence to meet its burden of

---

[1] Through its Petition, the Commonwealth also sought the forfeiture of a 2008 Mercedes Benz M-Class sport-utility vehicle. *See* Reproduced Record (R.R.) at 101. However, the Commonwealth subsequently acknowledged that the vehicle was lawfully owned by Ms. Delores Steele, Appellant's mother, and returned the vehicle to her possession. *Id.* at 3. Thus, we omit the vehicle from further discussion.

We also note that the page numbers in Appellant's Reproduced Record lack the lowercase "a" required by Pennsylvania Rule of Appellate Procedure 2173. For consistency, we refer to specific page numbers as they appear, albeit incorrectly, in the Reproduced Record.

proof. Upon review, we remand to the Trial Court for the issuance of an opinion pursuant to Pa.R.A.P. 1925(a).[2]

## I. Background

## A. The Criminal Proceeding

On February 2, 2019, Appellant was pulled over for a traffic stop by Officer Chad McGowan of the Harrisburg Police Department for illegal window tinting. *Commonwealth v. Robertson* (Pa. Super., No. 1161 MDA 2021, filed August 16, 2022) (unreported), slip op. at 1. During the traffic stop, Officer McGowan asked Appellant if he was active with probation or parole, to which Appellant responded that he was not. *Id.* Returning to his patrol vehicle, Officer McGowan informed two probation officers who happened to be accompanying him that Appellant denied being active with probation and parole, a statement which the two probation officers knew to be false. *Id.* Following the initial stop, the probation officers detained Appellant at the scene and informed him that he was in violation of probation conditions imposed as the result of a previous criminal matter. *Id.* The probation officers then searched the inside of Appellant's vehicle and found a purple Crown Royal bag containing $8,000 in cash and an empty cigarette container that held loose cannabis. *Id.* A subsequent search of Appellant produced another $4,598 from his pants pocket and wallet. *Id.*

Following their search of Appellant's vehicle and person, the probation officers led him to Officer McGowan's patrol vehicle. *Id.* Officer McGowan thus conducted a second search of Appellant's person, which revealed a lumpy object in Appellant's groin area. *Id.* While Officer McGowan attempted to place him in

---

[2] Pa.R.A.P. 1925(a) provides that, upon the receipt of a notice of appeal, "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall . . . file of record at least a brief opinion of the reasons for the order."

handcuffs, Appellant broke free and briefly fled the scene, but the officers managed to restrain him. *Id.* With Appellant in handcuffs, Officer McGowan found six small bags of cocaine and one small bag of cannabis stuffed in Appellant's groin area. *Id.*

Appellant was criminally charged with two counts of possession with intent to distribute controlled substances, and one count each of possession of a controlled substances and possession of drug paraphernalia.[3] Prior to a trial, Appellant filed a pretrial suppression motion challenging the lawfulness of the officers' actions during his February 2, 2019 traffic stop and arrest. *Id.* at 2. A suppression court denied that motion following a hearing on the matter. *Id.* The matter proceeded to a jury trial. At the conclusion of the jury trial, Appellant was convicted of all counts. *Id.* On May 26, 2021, the trial court in that case sentenced Appellant to an aggregate term of four to eight years' imprisonment, which it modified following a post-sentence motion by Appellant to two and a half to five years' imprisonment, followed by five years of probation. *Id.*

### B. The Forfeiture Proceeding

On April 12, 2019, while the above charges were pending, the Commonwealth submitted to the Trial Court its Petition seeking, in relevant part, the $12,598 found in the Crown Royal bag and in Appellant's wallet and pants pocket. *See* R.R. at 97-101. Therein, the Petition summarized the events of February 2, 2019, as recalled by the officers. *Id.* at 98-100. The Commonwealth added that the officers did not find any drug paraphernalia indicative of personal drug use on Appellant's person or in his vehicle, and that Appellant was found to be in possession of two cellular phones. *Id.* at 100. Additionally, the Commonwealth averred that the currency

---

[3] Pursuant to Section 13(a)(30), (16), and (32) of the Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-113(a)(30), (16), and (32).

produced in the search was sent for ion scan testing,[4] which revealed an elevated presence of cocaine on the currency. *Id.* Accordingly, the Commonwealth argued that the money seized by the officers was subject to forfeiture under the provisions of Section 5803(b)(4) of the Forfeiture Act, 42 Pa.C.S. § 5803(b)(4).[5] *Id.* at 103.

In a response to the Petition filed on April 19, 2019, Appellant, *pro se*, asserted that he had no connection to, or knowledge of, the $8,000 inside the Crown Royal bag, and that the $4,598 found in his pocket and wallet were earned through lawful activities. *Id.* at 105-06. In a supplemental response, filed with the assistance of counsel on October 1, 2019, Appellant disputed the results of the ion scan test and demanded strict proof at trial. *Id.* at 112.

The Trial Court held a hearing on the Petition on July 6, 2020. *See id.* at 1. At the hearing's beginning, Appellant called attention to the suppression motion then pending before the suppression court. *Id.* at 4. Citing this Court's holding in *Commonwealth v. $26,556.00 Seized From Polidoro*, 672 A.2d 389, 393 (Pa. Cmwlth. 1996),[6] Appellant then argued that the Commonwealth would have no

---

[4] An ion scan is a device used to measure the presence of controlled substances, in even minute amounts, on bills of currency. *See Commonwealth v. $9,000 U.S. Currency*, 8 A.3d 379, 382 (Pa. Cmwlth. 2010) (likening an ion scan to "a small vacuum cleaner that is run over . . . money and captures residue of narcotics present on the money").

[5] Section 5803(b)(4) of the Forfeiture Act provides that "[p]roperty subject to forfeiture may be seized by a law enforcement authority if . . . [t]here is probable cause to believe that the property has been used or is intended to be used in violation of the [Controlled Substance Act] or another offense for which forfeiture is expressly authorized as a sanction." 42 Pa.C.S. § 5803(b)(4).

[6] In *Polidoro*, a suppression court granted two defendants' motion to suppress drug evidence on the ground that the warrant leading to the search of their place of business was legally defective. *Id.* at 391. In a subsequent proceeding, the Commonwealth nonetheless sought the forfeiture of money also seized during that search, arguing that "even when there has been an unconstitutional seizure, the res [in a forfeiture proceeding] is the actual defendant and its existence **(Footnote continued on next page…)**

4

evidence linking the seized money to unlawful activity. *Id.* at 8. Accordingly, Appellant argued that any evidence presented by the Commonwealth at the forfeiture hearing is premature in the absence of a resolution on the suppression motion and made a standing objection to the relevance of that evidence. *Id.* at 5. The Trial Court overruled the objection so that it could "at least get the evidence in," but acknowledged that its decision would ultimately depend on the outcome of the suppression motion. *Id.* at 9.

The Commonwealth then presented the live testimony of Officer McGowan. Officer McGowan stated that he had been working as a police officer since graduating from an academy in 2011, and for the Harrisburg Police Department since January, 2013. *Id.* at 45-46. In July 2017, Officer McGowan began working in the department's street crimes unit, where he was tasked with "conducting street-level drug investigations, apprehending wanted fugitives[,] and [conducting] firearm seizures." *Id.* at 47.

Regarding the February 2, 2019 incident, Officer McGowan recalled that his initial traffic stop of Appellant was "pretty normal" and "very civil." *Id.* at 77. Initially believing Appellant's statement that he was not on probation or parole at the time, Officer McGowan decided to turn his patrol vehicle lights off and let Appellant go after issuing a ticket. *Id.* at 53-54. The probation officers accompanying Officer McGowan then conducted their own search during which Officer McGowan observed one of the officers remove a plastic bag from inside Appellant's pants, which contained "several individually knotted plastic baggies and

itself cannot be suppressed." *Id.* at 392. This Court disagreed, holding that the Commonwealth must establish a nexus between seized property and illegal activity without the use of evidence that has been suppressed pursuant to the Fourth Amendment of the United States Constitution, U.S. CONST., amend. IV. *Id.* at 393.

5

narcotics." *Id.* at 57. The contents of the outer bag were as follows: a "large[,] knotted baggie of powder cocaine," two "medium-sized[,] knotted plastic baggies of powder cocaine," two "plastic baggies of crack cocaine," a "small plastic bag of crack cocaine," and a small, knotted plastic bag of cannabis. *Id.* at 58. Based on his training and experience, Officer McGowan concluded that the method of packaging the substances and their sheer quantity were strongly indicative of drug sales rather than personal use. *Id.* at 63. Officer McGowan then noted that he found $3,596 in Appellant's right front pants pocket, and another $1,002 in his wallet. *Id.* at 59-60. Additionally, Officer McGowan recalled that his search of the vehicle produced the Crown Royal bag containing approximately $8,000, but no paraphernalia consistent with personal drug use. *Id.* at 83. Officer McGowan also denied that Appellant appeared to be under the influence of cocaine or other controlled substances at the time of his detention and arrest. *Id*. at 61. Regarding the discovery of the cellular phones, Officer McGowan opined that it is "[v]ery customary" for drug dealers to carry two phones. *Id.* at 66.

On cross-examination, Officer McGowan explained that the currency and drugs seized during the arrest were packaged and placed in a secure evidence room, then sent by technicians to various laboratories for testing. *Id.* Officer McGowan acknowledged that, when dealers place drugs in small plastic bags prior to their seizure, residual quantities of the drugs can be found on the outer surface of those bags. *Id.* at 89. In addition, Officer McGowan acknowledged having touched both the money and the drug bags before placing them in his patrol vehicle. *Id.* Asked to describe how the drugs and money were stored before being sent to the evidence room, Officer McGowan could not recall whether they were packaged separately or

together, but asserted that he and fellow officers do their "best to keep those things separate." *Id.* at 90.

At the forfeiture hearing, the Commonwealth also presented the video testimony of Kimberly Boltz, an employee of the Counter Drug Joint Task Force who performed the ion scan of the currency at issue. *Id.* at 10. Ms. Boltz explained that most currency in circulation contains trace amounts of narcotics. *Id.* at 17. To determine the background level normally found on currency, which she referred to as the "casual contact" amount, her department periodically collects random samples of currency from banks throughout Pennsylvania. *Id.* In 2019, the casual contact level of cocaine in average currency statewide was determined to be 248.26 nanograms per "bundle" of currency—i.e., a stack containing 4 samples of each common denomination of currency, or 24 bills in total. *Id.* at 20.

When a law enforcement officer brings in currency from an investigation, the officer is asked to fan out the bills across a sterile surface, "like a deck of cards," so that Ms. Boltz or another technician can run the scanning machine across the collection of bills in three directions. *Id.* at 25. If the level of narcotics detected in the currency under investigation far exceeds the casual contact level obtained from statewide banks, the ion scanning device sounds an alarm. *Id.* at 21. To check for cross-contamination, Ms. Boltz and her colleagues also test the officer's hands and the material holding the currency. *Id.* at 24. Ms. Boltz also noted that the scanning machine goes through maintenance every six months, but could not recall how recently that had taken place before the currency at issue in the hearing was tested.[7] *Id.* at 16-17.

_____

[7] During the hearing, Appellant also objected to Ms. Boltz's testimony on the ground of relevance, explaining that "there has been absolutely no documentation presented" to confirm that **(Footnote continued on next page…)**

Testifying on the currency seized from Appellant's person and vehicle, Ms. Boltz recalled that it was tested on February 6, 2019. *Id.* at 29-30. In contrast to the 2019 statewide casual contact level of 248.26 nanograms, 898 nanograms of cocaine were detected on the scanning machine on those bills, a quantity which Ms. Boltz acknowledged to be "fairly close to . . . the highest number" that she had ever seen on a scanned sample.[8] *Id.* at 33. On cross-examination, Ms. Boltz acknowledged that the statewide casual contact level of 248.26 nanograms was obtained from just 15 of Pennsylvania's 67 counties, most of which lie in the western and far northern parts of the state; not one of the 15 counties comprised Dauphin or the counties surrounding it. *Id.* Ms. Boltz also acknowledged that her department is unconcerned with the chain of custody of the currency that it scans, which she characterized as the responsibility of the investigating officers, not of her department. *Id.* at 38.

On August 18, 2020, the Trial Court issued its Order granting the Petition. *See id.* at 146. The Trial Court's explanation of its decision is as follows, in its entirety:

> The seizure of the currency at issue occurred pursuant to a lawful arrest of [Appellant].
>
> The Commonwealth has presented sufficient evidence and expert testimony to establish, within a reasonable degree of scientific certainty, that the currency at issue was in close proximity to narcotics and a sufficient **and** a substantial nexus between the currency and

---

the ion scan machine was working properly on the day that the seized currency was tested. R.R. at 27. The Trial Court overruled the objection, explaining that Appellant was raising a question as to the testimony's evidentiary weight, not its admissibility. *Id.*

[8] Ms. Boltz explained that the ion scan contains two "channels" for detecting cocaine. R.R. at 21. The first channel peaks at a certain quantity, beyond which the second channel is triggered in order to perform a more accurate reading. *Id.* The second, "overflow" channel reading, is commonly referred to as "cocaine high." *Id.* at 22. The detection of 898 nanograms on the currency at issue in this case occurred on the "cocaine high" channel. *Id.* at 33.

prohibited activity; in this case possession with the intent to deliver a controlled substance.

At the time of the Hearing, and in response to the Court's invitation to provide additional information needed to render a decision, [Appellant] offered no substantive evidence to support his assertion that the currency came from sources other than furnished or intended to be furnished by a person in exchange for a controlled substance.

The Court further finds that the amount of currency at issue, and therefore the economic sanction, is not disproportionate to the wrong.[9]

*Id.* at 146-47 (emphasis in original). A supplemental order followed on August 26, 2020, which declared the $12,598 to be "forfeited to the Dauphin County District Attorney's Office under the provisions of [former] 42 Pa.C.S. § 6801."[10] Said funds, the order specified, "shall be used by the Dauphin County District Attorney's Office pursuant to 42 Pa.C.S. § 6801."

Following Appellant's appeal to this Court, the Trial Court issued a memorandum in lieu of an opinion pursuant to Pa.R.A.P. 1925(a). *Id*. at 159. Therein, the Trial Court stated that the reasons for its decision "are set forth in the August 18, 2020 Order," and that the Trial Court "thus directs the [Commonwealth] Court to that Order." *Id.*

---

[9] Although no legal authority is cited, this statement is an apparent reference to the rule that a "court must compare the amount of the forfeiture to the gravity of the defendant's offense." *Commonwealth v. 542 Ontario Street, Bethlehem, PA, 18015*, 989 A.2d 411, 418 (Pa. Cmwlth. 2010). If the forfeiture amount is "grossly disproportionate to the gravity of the defendant's offense, it is unconstitutional." *Id.*

[10] The former Forfeiture Act, codified at 42 Pa. C.S. §§ 6801-6802 and previously referred to as the Controlled Substances Forfeiture Act, was repealed by the Act of June 29, 2017, P.L. 247. The current version of the Forfeiture Act is codified at 42 Pa. C.S. §§ 5801-5808, went into effect on July 1, 2017, and "substantially altered the [previously] existing burden-shifting scheme for civil *in rem* forfeitures." *Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1039 n.12 (Pa. 2017).

## II. Discussion

In a forfeiture proceeding, the Commonwealth bears the initial burden of demonstrating, "by a preponderance of the evidence, that a nexus exists between the [seized property] and a violation of the Controlled Substance Act." *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (2005). "A preponderance of the evidence is tantamount to a 'more likely than not' standard." *Id.* (citation omitted). If the Commonwealth establishes a substantial nexus, then the burden shifts to the claimant to prove that he or she owns the property, lawfully acquired the property, and did not unlawfully use or possess it. *Commonwealth v. $301,360.00 U.S. Currency*, 182 A.3d 1091, 1097 (Pa. Cmwlth. 2018). The Commonwealth may satisfy its burden by circumstantial evidence, but it must show "more than the possibility or a mere suspicion of a nexus." *Id.*; *see also Commonwealth v. Marshall*, 698 A.2d 576, 579 (Pa. 1997) (holding that "the residual presence of drugs on some part of the [currency] in question establishes only the possibility or the suspicion of a nexus between the money and some type of drug activity"). Because the law generally disfavors forfeitures, forfeiture statutes must be strictly construed. *Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1038 (Pa. 2017).

Appellant maintains on appeal that several defects in the evidence offered by the Commonwealth prevented it from meeting its burden of establishing a nexus between the seized currency and unlawful activity. First, Appellant argues that "there is no way to confirm whether all of the bills [of seized currency] have narcotics on them or if a few would have contaminated the rest," as the ion scan is run over the entire stack of bills at once. Appellant's Br. at 26. Appellant also maintains that the calculation of the casual contact level employed at the hearing

was flawed, since the samples from which it was derived were not from south central Pennsylvania. Lastly, Appellant argues that Officer McGowan's failure to recall how the drugs and money seized during the arrest were packaged and handled afterward raises questions about cross-contamination and the items' chain of custody.

At this stage of the matter, it is difficult to fairly evaluate Appellant's arguments because of the Trial Court's omission of specific findings of fact or other detailed explanation of its decision from both of its orders. For example, it is impossible to determine the extent, if any, to which the Trial Court relied on the results of the ion scan test in reaching its conclusion. Similarly, we are left to guess whether part, or all, of Officer McGowan's testimony was a factor in its decision. The Trial Court's bare legal conclusion that the Commonwealth met its burden "to establish . . . that the currency at issue was in close proximity to narcotics" and that a "substantial nexus between the currency and prohibited activity" existed, R.R. at 146-47, provides no account of the facts undergirding that conclusion.

This Court has repeatedly observed that forfeiture cases "are fact sensitive cases." *Commonwealth v. $9,000 U.S. Currency*, 8 A.3d 379, 384 (Pa. Cmwlth. 2010); *Commonwealth v. Three Hundred Ten Thousand Twenty Dollars*, 894 A.2d 154, 161 (Pa. Cmwlth. 2006). We have also observed that, "unless the issues raised lend themselves to appellate review without an opinion, such as questions of law," a trial court's failure to issue an opinion pursuant to Pa.R.A.P. 1925(a) ordinarily requires a remand. *Artisan Constr. Grp., LLC v. Zoning Hearing Bd. of Upper Pottsgrove Twp.*, 275 A.3d 80, 84 (Pa. Cmwlth. 2022). Accordingly, we must remand this matter to the Trial Court with the instruction that it produce an opinion explaining its decision "in sufficient detail to permit meaningful appellate review."

11

*Fisler v. State Sys. of Higher Educ., Calif. Univ. of Pa.*, 78 A.3d 30, 41 (Pa. Cmwlth. 2013) (citing *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1389 (Pa. 1985)).

### III. Conclusion

For the foregoing reasons, we remand to the Trial Court to prepare, within 60 days, an opinion in support of its August 18, 2020 Order granting the Commonwealth's Petition in Forfeiture pursuant to Pa.R.A.P. 1925(a). In its opinion, the Trial Court shall explain its conclusion that the Commonwealth met its evidentiary burden under the *current* Forfeiture Act, 42 Pa.C.S. §§ 5801-5808, and relevant case law, with references to all necessary findings of fact.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| $12,598.00 U.S. Currency | : | |
| One 2008 Mercedes Benz M-Class | : | No. 944 C.D. 2020 |
| (Com. v. Kashif Robertson) | : | |
| | : | |
| Appeal of: Kashif M. Robertson | : | |

**O R D E R**

AND NOW, this 24th day of September, 2024, we REMAND the above-captioned matter to the Court of Common Pleas of Dauphin County (Trial Court). This Court's Prothonotary shall send a copy of this Order to Judge John J. McNally, III, and an additional copy to the Trial Court's Prothonotary. The Trial Court shall issue an opinion in support of its August 18, 2020 order that is consistent with the opinion accompanying this Order within **60 days** of its receipt of a copy of this Order. The Trial Court's Prothonotary shall then transmit the original record to this Court within **15 days**.

Upon notice that this Court has received the original record, Appellant Kashif M. Robertson is directed to submit to this Court a supplemental brief on the Trial Court's opinion within **30 days** of the filing of the Trial Court's opinion. Upon the filing of said supplemental brief, Appellee Commonwealth of Pennsylvania shall have **30 days** to file a responsive supplemental brief.

Jurisdiction retained.

_____
ELLEN CEISLER, Judge