609 A.2d 572

**COMMONWEALTH of Pennsylvania**

v.

**John Joseph TIMER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 19, 1992.

Filed June 26, 1992.

Joan M. Righter, Norristown, for appellant.

Mary M. Killinger, Executive Asst. Dist. Atty., Norristown, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and BECK, JJ.

BECK, Judge:

This is an appeal from the judgment of sentence imposed upon John J. Timer after he was convicted at a non-jury trial of criminal attempt and criminal conspiracy. The conviction arose as a result of a "reverse sting" operation in which an undercover narcotics officer posed as a drug

dealer and appellant and two others, including appellant's father, arranged to purchase drugs from the officer. Appellant challenges his conviction on several grounds, most of which go to a claimed insufficiency of the evidence on various elements of the Commonwealth's case. He also challenges the admission at trial of a co-conspirator's statement made during the drug transaction. Finally, appellant alleges that the trial court erred in failing to grant a mistrial when, on cross-examination, the Commonwealth assertedly introduced evidence of prior crimes. Appellant raises no claim of merit and we affirm.

The Commonwealth's case was presented at trial primarily through the testimony of undercover police officer John Pendell. Agent Pendell stated that the law enforcement goal of his sting operation was to target mid or upper level dealers of controlled substances by having the police officer pose as a large scale dealer from whom they could purchase drugs. Towards this end, Agent Pendell let it be known, through an informant, that he had a quantity of methamphetamine for sale. The agent also told the informant the price of the drugs and informed him of a meeting place and time in the event that the "targets" wanted to make a purchase. On this occasion, Agent Pendell, again through the informant, indicated a meeting place in Conshohocken, Montgomery County, on February 27, 1990.

On that date, the narcotics agent arrived at the designated parking lot with a half pound of methamphetamine. While the agent remained in his car, he was approached at the pre-arranged time by appellant. Appellant began the conversation with the officer by informing him that "he", referring to a third party, wanted to "taste" the product before he purchased it. Agent Pendell inquired as to whether "he" had the money with him. Appellant responded "Yeah" and the agent told him to have his companion bring the money over so that the agent could see it. To that request Timer stated, "He doesn't want to meet anyone". The agent remained steadfast and told Timer that he wanted to see the money before giving the purchaser a

"taste". According to the agent, Timer then suggested that he purchase a tiny sample of the drugs in order to bring back a taste to his companion. Agent Pendell reiterated that he wanted to see the money, to which Timer finally responded, "I'll get the money." As Timer began to walk away, Agent Pendell asked if he wanted a quarter pound or half pound of drugs. Timer indicated that he wanted the "half pound". In the meantime, a car driven by appellant's father backed into the space right next to Agent Pendell's car. Co-conspirator Jacob Perricone was seated next to appellant's father in the front passenger seat. Just after the appellant's father pulled the car in adjacent to the agent, appellant got in the car and sat down directly behind his father, who was in the driver's seat.

The driver spoke first. Sounding angry, he told the agent, "We were just about to leave." Then Jacob Perricone stated that he wanted to taste the drugs. Again the agent demanded to see the money. Perricone pulled a white business envelope from his jacket pocket and fanned out a large number of bills for the agent to see. Agent Pendell asked Perricone whether he wanted the half pound or the quarter pound, to which Perricone replied, "We'll take the whole half pound." Carrying the white plastic shopping bag containing the drugs, Agent Pendell emerged from his car and stood next to the other car. Perricone motioned for Pendell to get in the back seat.

Agent Pendell was hesitant to get in the back seat and he backed up and looked around. Jacob Perricone said to the agent, "Don't worry. We've been doing this for years." At that point Agent Pendell signalled the rest of the narcotics enforcement team and the three men were arrested. When the detectives approached the car, Jacob Perricone threw the envelope on the floor of the car on the driver's side. Later it was learned that the envelope contained $6800.00, more than was necessary to cover the $4500.00 cost of the half pound of methamphetamine.

The drugs which were the subject of the negotiations between Agent Pendell, John A. Timer, Jr., John J.

Timer and Jacob Perricone had been in police possession since February, 1987, apparently obtained as a result of another narcotics operation. At that time, the drugs were tested by Vincent Cordova, a chemist employed in the criminalistics section of a medical laboratory. Cordova testified that the drugs in question tested positive for methamphetamine. He stated that out of the approximately 437.6 grams of white powdery substance, fourteen percent (14%) was pure methamphetamine. In response to questions by defense attorneys, Cordova acknowledged that there is a slight degree of chemical breakdown in the purity of methamphetamine over time. Cordova confirmed that he had done some experimentation and that over a period of five years a five percent loss of the methamphetamine can occur. When asked on cross-examination whether the substance could break down to the point where "there's no longer any methamphetamine within this powder", Cordova reiterated the results of his testing. He testified that he "doubt[ed] very much" that such a loss could occur.

In light of the above noted testimony, appellant argues that the Commonwealth's evidence failed to show that the controlled substance which the co-conspirators here agreed to purchase was methamphetamine. This argument is based on the chemical expert's testimony that over a period of years a small percentage of breakdown may occur in the chemical composition of the drug. However, as was indicated above, the expert's testimony was unequivocal that the testing he had done revealed only that over a five year period, at most a five percent breakdown may be detected. The time lapse in question here was only three years and, in any event, the expert disputed the defense's speculation that the drugs could be diminished to the point of disappearance within that time period. We agree with the trial court's conclusion that, given the expert's testimony, the possibility of chemical dissipation of the methamphetamine is of no significance.

Appellant also argues that the Commonwealth's evidence was insufficient because it failed to disprove im-

possibility. The crux of the argument, which appellant raises without support, is that since the undercover agent did not intend actually to sell the drugs to appellant, he and his companions could not have conspired to possess them. This argument is wholly without merit. The evil against which the conspiracy law is aimed is the agreement of two or more persons to act in concert for a criminal purpose. The fact that the criminal purpose would not be accomplished as a factual matter does not bar nor diminish the capacity and the intent to agree to accomplish the criminal object. The police officer's knowledge that he would not relinquish the drugs to appellant does not present a defense to the formation of the conspiratorial agreement and the overt steps the conspirators took toward its accomplishment. In *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986), the supreme court rejected appellant's argument that he should have been permitted to raise the defense of impossibility to the crimes of bribery and conspiracy. The factual impossibility was based on the asserted lack of power on the part of the bribe offeree to perform the desired favor. The court stated: "Factual impossibility is not an available defense under the Crimes Code...." 503 Pa. at 587, 470 A.2d at 72.

Appellant also contends that the evidence at trial established that he was entrapped as a matter of law and that therefore his conviction cannot stand. He alleges that the meeting was arranged by improperly coercive police tactics. This argument offers no basis for relief. The standard for evaluating whether entrapment has occurred is an objective one. Application of the entrapment test was illustrated recently by this court, en banc, in *Commonwealth v. Wright*, 396 Pa.Super. 276, 578 A.2d 513 (1990), *appeal denied*, 526 Pa. 648, 585 A.2d 468 (1991). In *Wright*, we emphasized that the objective test for entrapment focusses on the conduct of the police to determine whether the conduct was designed to provoke criminal behavior in those innocently disposed. The evidence in

*Wright,* which was found to establish entrapment as a matter of law, involved police conduct which utilized persuasive techniques condemned by the court. The police in *Wright* used an informant who feigned friendship with the defendant and convinced the defendant to purchase marijuana for him as a favor. The informant, posing as a friend, supplied the money for the drugs to the defendant and fabricated stories to make the defendant believe that the informant could not buy the marijuana himself. Therefore, the defendant agreed to buy the drugs for his "friend" with his "friend's" money and, as the court found, did not obtain any personal benefit from the transaction.

Appellant's reliance on *Wright* is misplaced, however, because the instant case is not comparable. The most that can be said of the informant's involvement here is that he was the intermediary between the police and appellant and the other potential purchasers. Other than to "set up" the meeting for the drug purchase, there is no evidence in the record that the informant was more deeply involved. He did not supply the money for the drug purchase. In fact there is no indication that the purchase would provide the informant with drugs or profit, or any other gain at all. The purchase in no way was seen as a "favor" to the informant. According to appellant's own testimony, the friendship he developed with the informant revolved around all the "normal stuff" but included a mutual element of drugs "as far as [appellant was] concerned and as far as [the informant] was concerned". This situation in no way approximates the coercive police conduct condemned in *Wright.*

Appellant also argues that the trial court erred in admitting Jacob Perricone's statement made during the transaction with the agent that "We've been doing this for years". Appellant insists that this statement was evidence of other crimes and was inadmissible since it did not fall within the various recognized exceptions to the rule prohibiting such evidence. The argument is meritless. As the trial court correctly found, Perricone's statement to the

agent was admissible because it was made by a co-conspirator during the commission of the crime. During the course of a conspiracy, each conspirator is considered the agent of the other, and thus a statement by one is an admission by all. *See Commonwealth v. Stoltzfus,* 462 Pa. 43, 58–59, 337 A.2d 873, 880–881 (1975); *Commonwealth v. Holloway,* 429 Pa. 344, 346, 240 A.2d 532, 533–534 (1968). If the statement is spoken "in furtherance of and during the continuance of the common purpose" of the conspiracy, it is admissible against all. *Commonwealth v. Scarborough,* 313 Pa.Super. 521, 528, 460 A.2d 310, 314 (1983). Appellant's contention that the statement at issue was not made in furtherance of the conspiracy is, in the words of the trial court, "clearly specious". Perricone made the statement in the course of negotiating with the agent for a taste of the drugs he and the others were about to purchase. The reason Perricone said what he did was to persuade the agent to get into the car and conclude the "deal" which was the central and common purpose of their meeting. The statement was clearly admissible.

Finally, appellant argues that the trial court erred in failing to grant a mistrial when the prosecutor asked him on cross-examination whether "there was a period of time in which [he was] involved in an attempt to set up another deal prior to this." An objection to the question was sustained immediately and the question was not answered. The trial court denied the defense motion for a mistrial. Appellant now claims that he is entitled to a new trial. We do not agree. Clearly, not every arguably improper reference to prior criminal activity requires the grant of a mistrial. *See, e.g. Commonwealth v. Morris,* 522 Pa. 533, 564 A.2d 1226 (1989); *Commonwealth v. Carr,* 370 Pa.Super. 1, 535 A.2d 1120 (1987). Here the question was never answered and the mere asking of it cannot constitute irremediable prejudice. The trial court, sitting without a jury and having sustained the objection, will not

be presumed to have given the passing reference any weight whatsoever.

Judgment of sentence affirmed.