J-S11044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
Appellee   :
  :
v.   :
  :
LAMAR ANDERSON   :
  :
Appellant   :   No. 687 EDA 2022

Appeal from the Judgment of Sentence Entered September 20, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008690-2018

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:             **FILED JULY 17, 2023**

Appellant, Lamar Anderson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for unlawful contact with a minor, corruption of minors, indecent assault without consent, indecent assault of a person under 16 years of age, involuntary deviate sexual intercourse ("IDSI"), and endangering the welfare of a child.[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> [Complainant] testified that she was a friend of [Appellant's] daughter, [H.J.].  According to Complainant, the first time Complainant met [Appellant] was at [Appellant's] house in Southwest Philadelphia in July 2018.  The first time

---

[1]  18 Pa.C.S.A. §§ 6318(a)(1), 6301(a)(1)(ii), 3126(a)(1), 3126(a)(8), 3123(a)(7), 4304(a)(1), respectively.

Complainant was at [Appellant's] home, she stayed two nights with [H.J.]. During this visit, Complainant, and [Appellant's] two daughters slept in the back room. [Appellant] was in his room the entire time during this visit. According to Complainant, [Appellant's] room is part of the living room and in his room, there is [a] bed, tv, and other things.

During that same summer, Complainant stayed at [Appellant's] home a second time. This time, Complainant went to [Appellant's] house with [H.J.] and their friend, M.L. They went to [Appellant's] home to spend the night because they were going to babysit [Appellant's infant] son.[2] [Appellant] was expected to be at his house, but he stated he had to go to work. According to Complainant, [Appellant] was in and out during the night. He would come in, check on them and then leave. During this visit, Complainant and the other girls slept in the back and [Appellant] slept in his room.

The next morning, Complainant and [M.L.] went to the supermarket with [Appellant]. [H.J.] did not go to the supermarket because she was babysitting the baby in [Appellant's] room. While at the supermarket, [Appellant] asked [Complainant] "Do you want daddy to buy you a coloring book?"[3] Complainant stated she did not say anything to [Appellant] and just laughed. [Appellant] did not touch her while at the supermarket. After the supermarket, [Appellant] and [Complainant and M.L.] returned to the house, they began putting the food away. Complainant went into the kitchen by herself, and [Appellant] came into the kitchen. According to Complainant, when [Appellant] came into the kitchen, he picked her up and kissed her. After this happened, [C]omplainant went into the room with [H.J. and M.L.] Complainant stated she was in the kitchen because they

_____

[2] Complainant testified she babysat only the infant son, but M.L. testified that the girls babysat two young children. (*See* N.T. Trial, 1/29/20, at 61, 82-83).

[3] M.L. testified that she overheard the coloring book comment. (*Id.* at 86). M.L. stated that Appellant asked Complainant to go to the supermarket alone, but Complainant asked M.L. to accompany her. (*Id.* at 85).

were making breakfast. … [Appellant] wanted Complainant to go into the kitchen by herself, but Complainant stated [Appellant] was acting weird and [she] did not want to be alone with him.[4]  Further, while in the kitchen, [Appellant] pressed his "front private part" against Complainant's butt. Complainant also testified that [the day before Appellant kissed] her in the kitchen, [Appellant] had kissed her when she went into his room to get lotion.  Specifically, [Appellant] had picked her up by her thighs and kissed her on the lips.[5]  Complainant did not feel comfortable telling [H.J.] about these occurrences because [Appellant] was her dad.  However, Complainant did tell M.L.  [M.L. testified at trial that she saw Appellant press up against Complainant in the kitchen.]

Later that same day, another incident occurred between Complainant and [Appellant].  According to Complainant, she took [Appellant's] baby from [H.J.] and went into the back room where she and the other girls were sleeping.  She started taking pictures of her and the baby and sent them to her mom.  While she was in the room, [Appellant] entered the room.  Complainant testified that [Appellant] was talking to her and the baby.  Complainant was laying down on the bed while this was happening.  Next, [Appellant] got down on his knees.  He moved her shorts and underwear to the side with his fingers and said "say yes or no."  Next, [Appellant] started sucking and licking on her vagina. [Appellant] stopped when he heard M.L. coming.

Following the last incident with [Appellant], Complainant told M.L.  [M.L. testified that when Complainant disclosed

---

[4] Specifically, Complainant described Appellant's "weird" behavior as being affectionate, and Complainant also indicated that Appellant had previously showed her a pornographic video.  (*Id.* at 28).  Complainant's testimony concerning the pornographic video violated a prior ruling by a different jurist which prohibited any reference to the pornographic video.  After Complainant mentioned the pornographic video, the defense objected and requested a mistrial.  The trial court denied the motion for a mistrial and instead, struck the statement from the record.  (*Id.*)

[5] This testimony was inconsistent with Complainant's earlier statement that nothing unusual had happened the night before.  (*Id.* at 23, 30).

the events, Complainant looked shocked. M.L. suggested leaving but Complainant wanted to stay with H.J. M.L. left Appellant's house, but Complainant stayed for ten hours.] Additionally, Complainant told [H.J.] what happened, and [H.J.] called her mom to pick them up. After being picked up, Complainant told multiple people what happened. Complainant's mother called the police,[6] and after making a police report and speaking with the SVU, [Appellant] was arrested. [After her interview at SVU, Complainant went to the hospital to be examined. She felt uncomfortable, so the medical staff did not finish the exam and did not get any DNA samples.]

(Trial Court Opinion, filed 8/29/22, at 1-2) (record citations omitted).

On January 29, 2020, the court convicted Appellant of the above-mentioned offenses. The court sentenced Appellant on September 20, 2021, to an aggregate term of five to ten years' incarceration followed by three years of probation. Appellant timely filed a post-sentence motion on September 30, 2021, which was denied by operation of law on February 1, 2022. Appellant timely filed a notice of appeal on March 1, 2022. Appellant filed a voluntary Pa.R.A.P. 1925(b) statement of errors complained of on appeal on June 17, 2022.

Appellant raises the following issues for our review:

Is the verdict of guilty with respect to all charges against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice in light of the evidence presented at trial?

_____

[6] The officer wrote in his report that Appellant licked Complainant's vagina twice, once the first night in the kitchen and once in Appellant's room. This differed from Complainant's testimony at trial, during which Complainant stated that the only time Appellant performed oral sex on her was in Appellant's bedroom. (**Id.** at 127).

Did the trial court abuse its discretion when it denied [Appellant's] motion for a mistrial when [C]omplainant testified that [Appellant] previously showed her sexually explicit videos in direct contravention of a court order *in limine* which held such testimony to be inadmissible?

(Appellant's Brief at 7).

In his first issue, Appellant argues that his convictions are based solely on Complainant's testimony, which lacked any corroborating evidence or testimony. Specifically, Appellant asserts that Complainant refused the medical examination despite medical personnel's efforts. Appellant insists it is "illogical" that no one witnessed the alleged assault, which Complainant said occurred during the day when other people were in the home. Appellant emphasizes that Complainant possessed her cellphone throughout the whole stay at Appellant's home, but she did not text or call anyone for help after the alleged assault. Appellant further highlights that Complainant's text message to her mother of a picture of Appellant's infant child with Complainant after the alleged assault is inconsistent with Complainant having been assaulted. Appellant maintains that M.L. offered Complainant a ride home after the alleged assault, but Complainant chose to stay at Appellant's house for ten hours, which defies common sense to leave the house if an assault had taken place. Appellant also emphasizes that Complainant acted normally throughout the stay at Appellant's home, despite the alleged assault.

Additionally, Appellant points to various inconsistences in Complainant's testimony, highlighting: (1) Complainant's statement that nothing unusual

- 5 -

happened the first night compared to her subsequent statement that Appellant kissed her when she went to get lotion; (2) Complainant's testimony that she only babysat Appellant's infant child, which contradicts M.L.'s testimony that the girls were babysitting two young children; and (3) Complainant's testimony that Appellant licked her vagina once, which contradicts the police report statement that Appellant also licked her vagina on another occasion. Appellant concludes the guilty verdicts were against the weight of the evidence, and this Court must grant Appellant a new trial. We disagree.

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the… verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellant court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

Instantly, the trial court reasoned:

[Appellant's] argument is mainly based on the credibility of [Complainant]. It is within [the c]ourt's discretion to believe all, part or none of the evidence and to determine the credibility of witnesses. [The c]ourt found [C]omplainant to be a credible witness. Specifically, [the c]ourt stated "Now, as far as listening to [C]omplainant testify, there are things she wasn't—that weren't a hundred percent accurate. They weren't things that really related to what actually allegedly happened to her." [N.T. Trial at 170.] Additionally, [the c]ourt has reviewed the entire record and [the c]ourt concludes that the verdict was not so contrary to the evidence as to shock one's sense of justice. Contrary to [Appellant's] argument, the evidence of this case was compelling and supports [this c]ourt's verdict.

(Trial Court Opinion at 8). We agree with the court's analysis.

Here, it was within the trial court's discretion to determine the credibility of Complainant's testimony. **See Champney, supra**. The court expressly noted that any inconsistencies in Complainant's testimony were not critical to Complainant's description of the assault that occurred. **See Commonwealth v. Fuentes**, 272 A.3d 511, 519 (Pa.Super. 2022) (holding victim's conflicting testimony regarding assault does not rise to level of "shocking the conscience of the court" given victim's overarching ability to provide salient facts relevant to sexual assault she had experienced). Additionally, the court heard testimony regarding Complainant's actions and behavior after the alleged assault, and still deemed Complainant's testimony credible. Further, Complainant testified that she was uncomfortable completing the medical examination, which was why the Commonwealth lacked DNA evidence in this case. We will not substitute our judgment for the trial court as fact finder. **See Champney, supra**. On this record, the verdict is not so contrary to the

evidence as to shock one's sense of justice. *See id.* Therefore, Appellant's first issue on appeal merits no relief.

In his second issue, Appellant argues the court abused its discretion when it denied Appellant's motion for a mistrial. Appellant contends that Complainant's reference to Appellant having shown her a pornographic video directly violated the prior ruling on Appellant's motion *in limine* seeking to exclude such testimony. Appellant asserts that Complainant's mention of Appellant's prior bad acts prejudiced the judge as fact finder. Appellant concludes the denial of a mistrial was improper, and this Court must grant a new trial. We disagree.

In reviewing a challenge to denial of a mistrial, our standard of review is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Cox*, 231 A.3d 1011, 1018 (Pa.Super. 2020) (quoting *Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa.Super. 2003)). Further, "not every arguably improper reference to prior criminal activity requires the grant of a mistrial." *Commonwealth v. Timer*, 609 A.2d 572, 576 (Pa.Super. 1992).

We observe that "trial judges sitting as fact finders in criminal cases are presumed to ignore prejudicial evidence in reaching a verdict." **Commonwealth v. Dent**, 837 A.2d 571, 582 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004) (quoting **Commonwealth v. Irwin**, 579 A.2d 955, 957 (Pa.Super. 1990), *appeal denied*, 527 Pa. 592, 588 A.2d 913 (1991)). "The trial court, sitting without a jury and having sustained the objection, will not be presumed to have given the passing reference any weight whatsoever." **Timer, supra**.

Instantly, the trial court explained:

> There is no evidence that a mistrial was manifestly necessary and that the denial of the motion for a mistrial deprived [A]ppellant of a fair and impartial trial. At the [m]otion *in [l]imine* hearing, [another jurist] instructed the Commonwealth to instruct its witnesses to not testify about the video. [**See** N.T. Trial at 29]. At trial, the witness made a reference to a porn video that was shown to her by [Appellant].
>
> At trial, the direct examination went as follows:
>
> Q: How come you didn't want to be in the kitchen alone with him?
>
> A: Because he was acting weird.
>
> Q: What do you mean by weird?
>
> A: Affectionate.
>
> Q: How was he [being] affectionate towards you?
>
> A: Because before he would like—before, like the first time we went over there, he was showing us like a sex video.
>
> [**Id.** at 28].

> The defense moved for a mistrial. [The c]ourt overruled the objection. [The c]ourt stated "If there were a jury, I would give them a curative instruction. Obviously, I'm a Judge and I'm going to ignore that because obviously, I am capable of ignoring it. Whether a jury could or not, I don't know. In this case, since it's only related to me, I'm going to strike it, and I'm going to overrule your request for a mistrial." [*Id.* at 29]. [The c]ourt explicitly stated that it would ignore that part of the testimony and strike it from the record. Based on the circumstances surrounding the testimony and [the c]ourt's action, [the c]ourt's actions did not prejudice or deprive [A]ppellant of a fair trial.

(Trial Court Opinion at 5-6). We agree with the court's analysis.

Here, it was within the trial court's discretion to deny the motion for a mistrial. *See Cox, supra*. The court expressly noted that Complainant's improper reference to the pornographic video did not prejudice the judge as fact finder, and we presume the trial judge did not give the improper reference any weight. *See Dent, supra*; *Timer, supra*. Therefore, Appellant's second issue on appeal merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2023