J-S38016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

LUIGI RODRIGUEZ

Appellant

:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 450 EDA 2025

Appeal from the Judgment of Sentence Entered January 21, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001890-2024

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.: **FILED DECEMBER 23, 2025**

Appellant, Luigi Rodriguez, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for aggravated assault, simple assault, recklessly endangering another person ("REAP"), possessing instruments of crime ("PIC"), persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1] We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> At trial, the Commonwealth first presented the testimony of Philadelphia Police Officer Ronald Hipple. Officer Hipple testified that on October 3, 2023, he received a radio call for gunshots, directing him to a shopping plaza on the 4600 block of Roosevelt Boulevard in Philadelphia. Within 45

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(4); 2701(a); 2705; 907(a); 6105; 6106; and 6108, respectively.

seconds, he arrived at the scene and encountered a Caucasian female, identified as [Kathleen] Cuadra, who was limping with blood stains on her pants; she told him that she had just been shot. Per police protocol for gunshot victims, Officer Hipple immediately placed Ms. Cuadra in the back of his vehicle and emergently transported her to Einstein Hospital. Ms. Cuadra was admitted to the emergency room, where she underwent treatment for gunshot wounds to her legs.

The complainant, Kathleen Cuadra, testified next for the Commonwealth. Ms. Cuadra testified that on October 3, 2023, at approximately 7:25 p.m., she went to the Dollar Tree store on the 4600 block of Roosevelt Boulevard to do some shopping. Upon her arrival, she noticed her friend, Anthony, coming out of the store; he was arguing with another male, whom she perceived to be the store's security guard.[8] Ms. Cuadra walked over to Anthony and joined in the argument because, as she put it, "[T]hat's my friend." As they continued to argue, the male retrieved a handgun and fired a shot toward Ms. Cuadra: "[he] shot between my legs." The bullet did not strike Ms. Cuadra directly, but multiple bullet fragments ricocheted off the ground and struck both of her lower legs. Bleeding and crying in pain, Ms. Cuadra pleaded for help; she asked the people in the Dollar Tree store to call an ambulance.

[8] Ms. Cuadra candidly admitted that she had been drinking alcohol and using cocaine earlier that day, but testified that it did not prevent her from recalling the events at issue.

Ms. Cuadra testified that she was treated in the emergency room for bullet fragments in both of her legs. She then displayed her scars at trial, which included a dime-sized scar on her right shin and three smaller scars on her right calf. Ms. Cuadra testified that bullet fragments also struck her left leg, "but those [scars] cleared out." Finally, Ms. Cuadra was presented with surveillance video capturing some of the events that night, including the male pointing his arm toward Ms. Cuadra—which, she testified, was when he fired the shot—immediately followed by Ms. Cuadra reaching down at her legs, which was when "[she] had been shot."

The Commonwealth next called [Appellant's] girlfriend, Johanna Zavala, [who was pregnant with Appellant's child at the time of trial,] to the stand. Ms. Zavala testified that on October 3, 2023, she was working as an assistant manager at the Dollar Tree store at issue. That evening, [Appellant] arrived at the store to pick up some items that Ms. Zavala had purchased for her children. While [Appellant] was present, a large black man and a white woman (later identified as Ms. Cuadra) were stealing items from the store. Ms. Zavala removed the items from the individuals, which caused them to become "very aggressive." [Appellant]—who was not a security guard or employed at the store—intervened and told them that they had to turn in the items, including the toilet paper that the male was holding. Others also intervened, and the two "thieves" were shepherded out of the store. Ms. Zavala testified that she locked the doors for her personal safety: "they had it out for me…and started banging on the glass. They were totally drugged out."

Ms. Zavala unequivocally identified [Appellant] from surveillance photos of the interior and exterior of the Dollar Tree store captured during the incident; she identified [Appellant] both at her interview with detectives following the incident as well as during her testimony at trial. Ms. Zavala testified, however, that she had never before seen [Appellant] with a gun, nor did she see him shoot anyone that day.

Next, the Commonwealth presented the testimony of Philadelphia Police Detective John Leinmiller. Detective Leinmiller testified that he was the lead detective assigned to investigate the October 3, 2023 shooting on the 4600 block of Roosevelt Boulevard. As part of his investigation, he obtained surveillance videos from both the Dollar Tree store and the adjacent TMobile store. The videos depicted the events at issue, including, *inter alia*: [Appellant] engaging with Ms. Cuadra and a black male inside, and then outside, the Dollar Tree store; [Appellant] running to his white pick-up truck, returning, and pointing and waiving his arm at them; [Appellant] subsequently pointing his arm at Ms. Cuadra, immediately followed by Ms. Cuadra grabbing at her lower legs; and [Appellant] fleeing the scene in his white pick-up truck. Detective Leinmiller testified that he

- 3 -

captured numerous still images/photographs from the videos, which he presented to Ms. Zavala—and she positively identified [Appellant] in the photographs.

Detective Leinmiller testified that based on all the evidence he had gathered, he developed [Appellant] as a suspect in this case. Accordingly, he assembled a "patrol alert" containing photographs of [Appellant] and the white pick-up truck that "he got in and out of and then fled the scene in." Pursuant to the patrol alert, Philadelphia Police Officers Schanz and McCauley spotted [Appellant] in his vehicle and arrested him.

The Commonwealth next presented the expert testimony of Christopher Lezynski. Mr. Lezynski was presented, and accepted, as an expert in the field of cell phone data and analysis. He testified that, as a member of the Gun Violence Task Force of the Philadelphia District Attorney's Office, he regularly reviews and interprets cell phone information. In this case, detectives provided him with [Appellant's] subpoenaed cell phone records, which he analyzed and plotted onto a map, and presented in a PowerPoint at trial. Among other things, Mr. Lezynski's analysis demonstrated that [Appellant] had received and made numerous cell phone calls in both temporal and geographic proximity to the shooting incident—including one a few minutes before and seven immediately thereafter.

Finally, prior to resting, the Commonwealth introduced stipulated evidence that [Appellant] was ineligible to possess a firearm at the time of the incident due to a prior felony conviction.

Based on the foregoing evidence, the [c]ourt found [Appellant] guilty of aggravated assault, simple assault, REAP, PIC, persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia. Following a presentence investigation, the [c]ourt [sentenced Appellant on January 21, 2025, to an aggregate term of 11½ to 23 months' imprisonment, plus seven years' probation.] This [timely] appeal followed [on February 9, 2025]. [Following the grant of an extension of time, Appellant also complied with the court's order to file a concise statement of errors per

- 4 -

Pa.R.A.P. 1925(b).]

(Trial Court Opinion, filed 4/24/25, at 2-6) (internal citations and most internal footnotes omitted).

Appellant raises the following issues on appeal:

> Was the evidence insufficient to sustain the conviction for aggravated assault as a felony-2, where Appellant did not intentionally or knowingly cause bodily injury to Complainant, as at most the evidence may have proved Appellant discharged a weapon at the ground in a careless manner?
>
> Did the trial court err by denying Appellant's motion for a mistrial and should the Commonwealth be barred from retrial, where the Commonwealth advised the defense that Complainant would not make an in-court identification, but then proceeded in a line of questioning that recklessly elicited an in-court identification, which violated due process and Appellant's right to a fair trial under the Federal and PA Constitutions?

(Appellant's Brief at 8).

In his first issue, Appellant argues that the Commonwealth failed to prove that he acted intentionally or knowingly in causing the victim bodily injury. Appellant concedes that the victim suffered some bodily injury. Appellant emphasizes, however, that the Commonwealth failed to establish his *mens rea*. Appellant insists that he shot at the ground and denied shooting at victim or victim's "shoplifting side-kick, as they absconded with un-bought dollar items." (*Id.* at 18). Appellant claims the Commonwealth established only that Appellant attempted to stop the shop-lifting duo by simply shooting at the ground. Appellant maintains that the victim and her partner were the ones acting aggressively. Appellant concludes the evidence was insufficient

to sustain his conviction for aggravated assault on these grounds, and this Court must grant relief. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the Appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines aggravated assault in pertinent part, as

follows:

> **§ 2702. Aggravated Assault**
>
> **(a) Offense defined.**—A person is guilty of aggravated assault if he:
>
> *   *   *
>
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(4). "A person acts intentionally with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist." 18 Pa.C.S.A. § 302(b)(1). "A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S.A. § 302(b)(2).

Instantly, the trial court evaluated Appellant's sufficiency claim as follows:

> The evidence established that [Appellant] engaged in an altercation with the complainant and her cohort inside, and then outside, the Dollar Tree store—before retreating to his pick-up truck and returning to confront them again. Ms.

Cuadra testified that [Appellant] then pointed a gun at her and shot at the ground "between [her] legs," striking her with multiple bullet fragments in each of her legs. Ms. Cuadra's testimony was corroborated by the video evidence, which depicted [Appellant] waving his arm at the couple before pointing it at Ms. Cuadra, immediately followed by Ms. Cuadra grabbing at her lower legs. After multiple 911 callers reported the shooting, police "rushed" to the scene within 45 seconds, and encountered Ms. Cuadra, who was bleeding and crying in pain. Rather than waiting for an ambulance, Officer Hipple placed Ms. Cuadra in the back of his vehicle and emergently transported her to the hospital, where she underwent treatment for gunshot wounds to her lower extremities. In sum, [Appellant's] acts of intentionally pointing and discharging his illegal firearm in the direction of the complainant, which caused her to sustain bodily injuries, amply supported his conviction for aggravated assault with a deadly weapon.

\* \* \*

Here…[Appellant] was standing in front of Ms. Cuadra when he pointed and fired his illegal handgun in the direction of her lower legs [from a distance of only five to ten feet], causing her to sustain numerous bodily injuries. As such, there is no question that [Appellant's] conviction was supported by the evidence.

(Trial Court Opinion at 9-10) (emphasis omitted).

We agree with the court's analysis. Essentially, Appellant asks this Court to credit the testimony of his witnesses over that of the Commonwealth's witnesses to believe that he merely shot at the ground in a careless manner in an attempt to stop the alleged shoplifters. In doing so, Appellant ignores our standard of review to evaluate the evidence in the light most favorable to the Commonwealth as verdict winner. *See Sebolka, supra*. Viewing the evidence under the appropriate lens, the evidence

demonstrated Appellant's requisite *mens rea* for the reasons outlined by the trial court. ***See id.***; 18 Pa.C.S.A. § 302(b); 2702(a)(4). Therefore, Appellant's first issue on appeal merits no relief.

In his second issue, Appellant asserts that prior to trial, the parties agreed that the victim would not be permitted to make an in-court identification of Appellant. Appellant claims the prosecutor acted recklessly by eliciting a line of questioning wherein the victim expressly identified Appellant in court despite the parties' prior agreement. Appellant maintains that it is a reasonable inference based on the victim's responses that the Commonwealth did not inform her not to make any in-court identification of Appellant. Appellant insists he was denied a fair trial as a result. Appellant proclaims the violation was so severe that prejudice should be presumed as a matter of law, "as this would be the only way that such reckless misconduct can ever be deterred." (Appellant's Brief at 25). Appellant concludes the court erred by denying his motion for a mistrial on these grounds, and this Court must grant relief. We disagree.

In reviewing a challenge to denial of a mistrial, our standard of review is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On

appeal, our standard of review is whether the trial court abused that discretion.

***Commonwealth v. Cox***, 231 A.3d 1011, 1018 (Pa.Super. 2020) (quoting ***Commonwealth v. Tejeda***, 834 A.2d 619, 623 (Pa.Super. 2003)).

Further, we observe that "trial judges sitting as fact finders in criminal cases are presumed to ignore prejudicial evidence in reaching a verdict." ***Commonwealth v. Dent***, 837 A.2d 571, 582 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004) (quoting ***Commonwealth v. Irwin***, 579 A.2d 955, 957 (Pa.Super. 1990), *appeal denied*, 527 Pa. 592, 588 A.2d 913 (1991)). "The trial court, sitting without a jury and having sustained the objection, will not be presumed to have given the [improper] passing reference any weight whatsoever." ***Commonwealth v. Timer***, 609 A.2d 572, 576 (Pa.Super. 1992).

Instantly, the court rejected Appellant's claim of error as follows:

> …[Appellant] faults the [c]ourt for allegedly allowing Ms. Cuadra to make an in-court identification. This claim is devoid of merit.
>
> At trial, the Commonwealth asked Ms. Cuadra if she knew what the "person looked like," to which she responded, "Like the person over there." The [c]ourt sustained [Appellant's] objection and struck Ms. Cuadra's response from the record:
>
> Q. ... What happens when you get to the Dollar Tree?
>
> A. When I got to the Dollar Tree, I seen my friend actually coming out and arguing with somebody, I guess, security.
>
> Q. Security?

- 10 -

A. Well, he said that he worked there.

Q. Okay. Do you kind of know what that person looked like?

A. Yes.

Q. Okay. What did that person look like?

A. Like the person over there.

[DEFENSE COUNSEL]: Objection, Your Honor. I'd call for a mistrial.

[ASSISTANT D.A.]: And, Your Honor, I did not ask her to make an identification. I asked her to describe what the person looked like that she saw at the Dollar Tree.

THE WITNESS: He was Hispanic.

[DEFENSE COUNSEL]: Your Honor, there was a line up motion preserved from the preliminary hearing and refile[d]. The Commonwealth said there would not be an in-court ID. He just asked this witness, unnecessarily, ["W]hat did he look like[?"] She looked at my client and said, ["]It looks like him.["]

THE WITNESS: You're right.

[DEFENSE COUNSEL]: She had a photo lineup, and she could not ID. I asked to preserve the issue. It was preserved.

[ASSISTANT D.A.]: Your Honor, if I may, I asked her to describe what the man she spoke to at the store looked like. We can move to strike. This is a waiver [trial]. Your Honor can take that information out. As an offer of proof, Your Honor, I have multiple other witnesses that will be able to place [Appellant] there or make an in-court ID. I'll move on.

THE COURT: Your motion for a mistrial is denied. And your motion, your objection, is sustained and it's

- 11 -

stricken.

(N.T. 11/12/24 at 28-30)….

Thus, contrary to [Appellant's] contention, the [c]ourt did not allow the in-court ID. As such, this claim is without merit. …

(Trial Court Opinion at 15-17) (some internal citations omitted).

On this record, we cannot say the trial court abused its discretion by denying Appellant's motion for a mistrial. **See Cox, supra**. Initially, the prosecutor did not expressly violate the parties' agreement by eliciting an in-court identification of Appellant. Although the victim ultimately made the inappropriate identification of Appellant, the court made clear that it struck the remarks and gave them no weight. **See Timer, supra**. We cannot agree with Appellant's assertion that the prosecutor's actions here warranted a mistrial.[2] Further, we decline Appellant's invitation to "presume prejudice"

_____

[2] Appellant attempts to analogize the facts of this case to those in **Commonwealth v. Johnson**, 659 Pa. 277, 231 A.3d 807 (2020). Therein, our Supreme Court considered whether the double jeopardy clause bars retrial "where the Commonwealth obtains a conviction based on false evidence and its misconduct, while not undertaken with the intent to deny the defendant a fair trial, nevertheless stems from prosecutorial errors that rise substantially above ordinary negligence." **Johnson, supra** at 283, 231 A.3d at 810. In **Johnson**:

[T]he key evidence linking Johnson to a murder was a red baseball cap which had DNA in its sweatband. [T]he Commonwealth proceeded on the understanding that there was only one baseball cap involved – the red one – and that it contained both [the victim]'s blood and [Johnson]'s DNA. Post-conviction proceedings established that there were two

*(Footnote Continued Next Page)*

under these circumstances. Thus, Appellant's second issue on appeal merits no relief.[3] Accordingly, we affirm.

Judgment of sentence affirmed.

_____

> hats, with the red one having Johnson's DNA and a separate black cap containing the victim's blood. [N]either cap had DNA from both individuals. The lead investigator testified that he observed the red cap with fresh blood underneath the brim. That testimony was false and later revealed to be based on an assumption. Although separate property receipt numbers had been assigned to the two hats, this did not prompt the Commonwealth to investigate whether its trial witnesses were discussing two distinct caps[.] While these acts and omissions were not made intentionally or with a specific purpose to deprive [Johnson] of his rights, the [Supreme Court held that the] record is likewise consistent with [the trial court]'s characterization that such mistakes were "unimaginable."

*Commonwealth v. Kujawa*, 332 A.3d 835, 845 n.4 (Pa.Super. 2025) (internal citations and some quotation marks omitted), *appeal denied*, 2025 WL 2776162 (Pa. Sept. 30, 2025).

Here, the facts of this case are a far cry from the "unimaginable mistakes" at issue in *Johnson* that ultimately led to a conviction based on false evidence.

[3] Regarding Appellant's conviction for carrying firearms on public streets in Philadelphia, we must acknowledge this Court's recent decision in *Commonwealth v. Sumpter*, 340 A.3d 977 (Pa.Super. 2025), which deemed this statute unconstitutional on an equal protection basis as applied to the appellant in that case. Appellant's brief makes no argument regarding the constitutionality of the statute at issue. *See Commonwealth v. Spone*, 305 A.3d 602, 609 (Pa.Super. 2023) (reiterating that issues of constitutional dimension cannot be raised for first time on appeal). Thus, *Sumpter* affords no relief for Appellant.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/23/2025</u>